## Claxton v. Commonwealth.

(Decided October 4, 1927.)

## Appeal from McCreary Circuit Court.

1. **Homicide.**—In prosecution for murder, whether defendant aided and abetted in killing deceased under circumstances such as would authorize conviction for murder or voluntary manslaughter, according to whether there was or was not malice, held for jury.

2.  Homicide.—Instruction in prosecution for murder, submitting to jury whether defendant and codefendant had conspired to murder deceased, if error, held harmless, where defendant was convicted for manslaughter only, and given the lightest penalty possible.

3.  Homicide.—On trial for murder, evidence that defendant and his codefendant planned to haul coal over a passway running through land owned by the deceased, regardless of consequences, and that they had stated they would do so if they had to kill everybody, held to justify submission of conspiracy to murder issue.

R. L. POPE and GEO. HATFIELD for appellant.

F. E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellant, Sam Claxton, who had been jointly indicted with a number of other defendants for the murder of Willie Wilson and tried separately, was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for two years. This appeal is prosecuted from the judgment of the McCreary circuit court so convicting him.

Appellant and his codefendant, Willie Smith, appear to have been awarded a contract by the county board of education of McCreary county for furnishing coal to certain schools of the county. Mark Wilson was a bidder for this contract. Appellant, Claxton, owned the coal bank from which they proposed to procure the coal, and it had to be hauled over a passway which ran through lands owned by Mark Wilson. After procuring the contract, Claxton and Smith went on Friday to work the road along this passway to put it in shape for hauling. The passway leaves the public highway at a point about opposite the dwelling house of Mark Wilson. He observed them working the road, went to where they were, and told them that they need not do so, as they could not haul the coal over it. Some altercation occurred, and, from the testimony as to what was said, it may be reasonably inferred that Mark Wilson made up his mind fully that Claxton and Smith should not haul the coal over the passway, and that they equally as positively determined that they would do so.

On the following Monday morning appellant and Willie Smith and a young brother of Willie Smith started from the Smith home to the coal bank, driving an ordinary farm wagon with a horse and a mule hitched to it.

When they came in view of the place where the passway leaves the public highway, they observed that Mark Wilson, his son, Willie Wilson, and his grandson, Bert Wilson, were on the ground, that they had erected a fence across the pathway, and that Willie Wilson was armed with a shotgun and pistol. Appellant, Sam Claxton, was armed with a shotgun, and his codefendant, Willie Smith, was armed with a pistol. They drove to where the fence had been erected across the passway, and Mark Wilson called to them to halt, and he and his son, Willie Wilson, informed Claxton and Smith that they could not go through. Claxton then asked Mark Wilson if he had investigated the law on the question, and Wilson responded that he had a law book at home which he had read. Willie Wilson then asked Claxton what he had to do with the coal, and he responded that he had bid on the contract and was to dig the coal, and Smith was to haul it. Wilson then said to him he did not care for him going through, but, as for "that God damn wall-eyed son of a bitch (referring to Willie Smith), I will die before he can make a step over there." Immediately after so saying, Willie Wilson, who had a shotgun in his hand and a pistol sticking from his right coat pocket, stepped in front of the team and told Claxton and Smith to get away from there at once, and that the quickest moment they could do so would be too slow.

The testimony for the commonwealth and that for appellant is practically in accord up to this point. The witnesses for the commonwealth testify that immediately after Willie Wilson made the remarks last above referred to, and before he had made any character of demonstration with either of the weapons which he had, Willie Smith drew his pistol and fired two shots at him, the first of which took effect, and that thereafter Willie Wilson fired at Smith, using both his shotgun and pistol. The testimony for appellant was to the effect that, immediately after making the remarks above referred to, Willie Wilson presented his shotgun and fired at Willie Smith, after which the latter drew his pistol and fired in self-defense. Smith fired six shots from his pistol in the course of the shooting, and Willie Wilson fired six shots from his pistol and one from the shotgun. Bert Wilson admits he fired two shots with a shotgun at Willie Smith, after the shooting started between his father and Smith. Mark Wilson testified that appellant, Sam Claxton, in the course of the encounter, fired at least one shot with a

shotgun at Willie Wilson. Only one shot took effect in the body of Wilson, a pistol bullet, and he died from its effects within two or three days.

It is insisted for appellant that the verdict against him is flagrantly against the evidence. This court cannot agree with that contention. While the evidence is all to the effect that deceased was killed with a pistol shot and that appellant did not inflict the fatal wound, yet the evidence was such as to make it a question for the jury whether appellant was present aiding and abetting Willie Smith when he inflicted the fatal wound on Willie Wilson, under such circumstances as would authorize the jury to find him guilty of murder or voluntary manslaughter, accordingly as they might believe the aiding and abetting was done with malice aforethought or in sudden heat and passion or in sudden affray.

It is insisted that the trial court erred in instructing the jury that appellant might be found guilty of murder upon the theory that he and his codefendant Smith had conspired to kill Wilson, and that the homicide was committed while the conspiracy existed and in furtherance of it; the alleged error being that there was no evidence upon which to base this instruction. In view of the fact that the jury did not find appellant guilty of murder, and consequently could not have based the verdict returned upon the conspiracy instruction, and taking into account the fact that the jury fixed for appellant the lightest penalty possible for one found guilty of manslaughter, it is extremely difficult to see how giving this instruction, if erroneous, could be held to have been prejudicial. However, this court is unable to agree with appellant that there was not sufficient evidence of the existence of a conspiracy to authorize a submission of that theory of the case to the jury. The evidence as to what passed between appellant and his codefendant Smith, on the one part, and Mark Wilson, on the other, on Friday, clearly indicates that Claxton and Smith made up their minds to haul the coal over the disputed passway, regardless of consequences, and that Wilson made up his mind that they should not do so, regardless of consequences. Appellant and his codefendant appear to have gone to the county seat on Saturday and to have interviewed a lawyer and the county attorney and the county judge. On the facts laid before this attorney and the officials, they were advised that they had the right to haul the coal over the passway. Between the altercation on Friday and the

homicide, which occurred early Monday morning, appellants are shown to have stated that Claxton had a .38 special, and that Smith had a good gun, and that they were going to haul the coal over the passway if they had to kill everybody on the creek. The testimony further tends to establish that Mark Wilson and his son and grandson, between the date of the altercation on Friday and that of the homicide on Monday, had been equally as positive in their conversations with some of the neighbors to the effect that they should not haul the coal over the passway. Emphasizing the fact that they meant what they said, the Wilsons arose early Monday morning, erected a fence across the passway at the point where it leaves the public highway, and stationed themselves there armed in order to prevent Claxton and Smith from using the passway. Illustrating that they fully meant what they had said, appellant, Sam Claxton, and his codefendant, Willie Smith, arose early Monday morning, armed themselves with pistol and shotgun, and proceeded with the wagon and team to carry out their previously expressed determination to use the passway. According to all of the testimony, the two opposing parties began shooting at each other immediately upon coming in contact, as a result of which Willie Wilson was killed. These facts seem to this court to be sufficient to have authorized the submission of the conspiracy instruction to the jury; and appellant's complaint that it was error to so instruct the jury cannot be sustained.

This court's consideration of the record discloses no error committed by the trial judge upon which to base a reversal of the judgment. The judgment must therefore be affirmed.

Judgment affirmed.